# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAN DARLENE WARRIOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-305-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Jan Darlene Warrior requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 9, 1958, and was fifty-seven years old at the time of the administrative hearing (Tr. 34). She has a high school education and vocational training in phlebotomy, and has worked as a seamstress (Tr. 35-36, 46). The claimant alleges that she has been unable to work since May 9, 2014, due to depression, high blood pressure, back pain, nerve pain, rheumatoid arthritis, and osteoarthritis (Tr. 213).

## Procedural History

On July 10, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on July 15, 2014 (Tr. 161-77). Her applications were denied. ALJ Larry D. Shepherd conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated March 1, 2016 (Tr. 14-24). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a limited range of

light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), *i. e.,* she could lift/carry twenty pounds occasionally and ten pounds frequently; sit/stand/walk for about six hours during an eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch, crawl, and reach overhead (Tr. 19). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as a seamstress (Tr. 23-24).

**Review**

The claimant contends that the ALJ erred by failing to properly: (i) analyze the opinions of treating physician Dr. Osborn, (ii) weigh the opinions of the state agency physicians, (iii) analyze the opinion of consultative examiner Dr. Buffington, and (iv) assess her RFC. The Court agrees with the claimant's first and third contentions, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant's obesity, degenerative disc disease, hypertension, generalized osteoarthritis, and fibromyalgia were severe impairments, but that her depression was non-severe (Tr. 17). The medical evidence relevant to this appeal reveals that Dr. Osborn regularly treated the claimant between March 2013 and November 2015 (Tr. 326-48, 411-55). In March and April 2013, Dr. Osborn treated the claimant for depression, hypertension, neuropathy, and lumbar disc disease (Tr. 347-48). At the claimant's next follow-up appointment in April 2014, Dr. Osborn indicated the claimant was tender in all areas of her spine and in all of her joints, and he diagnosed her with osteoarthritis (Tr. 343-45). The claimant was involved in a motor vehicle accident on May 9, 2014, and CT scans of her abdomen and chest revealed subcutaneous contusions,

while a CT scan of her cervical spine revealed shallow cervical lordosis with left curvature possibly representative of spasm, and mild spondylosis anteriorly and posteriorly at C5-6 (Tr. 332-41). In August 2014, the claimant reported that her low back was still significantly worse than before the accident, but "[e]verything else seems to be doing better." (Tr. 411). Dr. Osborn again noted tenderness in all areas of her spine and in all of her joints, but his examination was otherwise normal (Tr. 412). At a follow-up appointment on October 28, 2014, the claimant reported pain in her arms and knees as well as significant back pain radiating into her legs (Tr. 415). On physical examination, Dr. Osborn found her spine was tender in all areas with decreased range of motion, and all of her joints were tender with decreased range of motion due to pain, but his exam was otherwise normal (Tr. 416-17). Thereafter, Dr. Osborn's treatment notes reflect similar findings until November 2015, the last appointment in the record (Tr. 449-55).

On October 28, 2014, Dr. Osborn completed a Medical Source Statement ("MSS") regarding the claimant's physical and mental abilities and limitations (Tr. 395-96, 457-58). He opined that the claimant could sit/stand for fifteen minutes at a time; work for two hours per day; occasionally lift ten pounds, bend, stoop, manipulate her hands, and raise her arms above shoulder level; never frequently lift; and needed to occasionally elevate her legs during an eight-hour workday, noting that she could not work an eight-hour day (Tr. 395). As to her mental impairments, Dr. Osborn indicated the claimant was not significantly impaired in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration; work with others; accept supervision; or get along with coworkers (Tr. 396). He concluded that the claimant's severe

osteoarthritis prevented her from engaging in gainful employment (Tr. 396). Additionally, the record contains a similar MSS from Dr. Osborn dated December 9, 2015, except he noted that the claimant had some memory loss due to her medications (Tr. 458).

State agency physicians reviewed the record in October 2014 and January 2015 and found the claimant could perform the full range of light work (Tr. 57-58, 79-80). State agency psychologists reviewed the record in August 2014 and December 2014 and found the claimant's mental impairments were non-severe (Tr. 56, 77-78).

Dr. Bill Buffington performed a consultative physical examination of the claimant on September 3, 2014 (Tr. 387-94). An x-ray of the claimant's lumbosacral spine taken as part of the exam revealed straightening of the lumbar curvature, but good alignment, well-maintained intervertebral disk spaces, and no degenerative changes to the vertebrae, sacrum, or pelvis (Tr. 394). On examination, Dr. Buffington noted, *inter alia,* painful decreased range of motion and paraspinous muscle tenderness in the claimant's cervical spine and lumbar spine; paraspinous muscle tenderness in her thoracic spine; full range of motion and good strength in her shoulders; and full range of motion without pain in her elbows, wrists, hips, knees, and ankles (Tr. 387-89, 392). He also noted weak heel and toe walking, a minimally unsteady tandem gait, and positive straight leg raise tests (Tr. 389). Dr. Buffington assessed the claimant with low back pain, neuropathy (by history), depression, and hypertension (Tr. 393).

At the administrative hearing, the claimant testified that she uses a cane two or three times per week due to swelling and pain her left foot which she described as feeling

like stepping on something sharp such as glass or needles (Tr. 35, 41-42). She stated that she does not drive very often due to involuntary jerking movements in her leg, and has a tendency to drop things due to numbness and tingling in her hands (Tr. 38, 40-41). As to specific limitations, the claimant testified that she could stand for ten minutes before needing to sit and rest, and could lift no more than ten pounds two or three times per hour (Tr. 43-44).

In his written opinion, the ALJ summarized the claimant's testimony and the medical records. At step two, he gave great weight to Dr. Osborn's opinion regarding the claimant's mental impairments, finding he indicated that her judgment and insight were intact and made no other psychologically-based notes at numerous appointments (Tr. 17). In discussing the opinion evidence at step four, the ALJ gave little weight to Dr. Osborn's opinion for the following reasons: (i) he made no positive findings other than tenderness and decreased range of motion in the claimant's spine and joints; (ii) he did not corroborate her complaints with any objective or laboratory studies; (iii) his treatment consisted solely of medication management; and (iv) his opinions were inconsistent with the May 2014 cervical CT scan, the September 2014 lumbar x-ray, and the claimant's own reported daily activities, particularly her continued part-time work (Tr. 23). Nonetheless, the ALJ adopted some, but not all, of the Dr. Osborn's limitations. As to Dr. Buffington's opinion, the ALJ referenced his lumbar x-ray and some of his findings concerning the claimant's hands and wrists, but entirely ignored the remainder of his report, and did not assign it any specific weight (Tr. 22). The ALJ then gave great weight to the state agency medical consultants' opinions because they were consistent with the

medical record as a whole, supported by specific reasoning, unbiased, and accounted for the claimant's subjective complaints (Tr. 22).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ assigned little weight to Dr. Osborn's opinions as to the claimant's physical limitations, and then adopted his limitations as to the claimant's ability to bend, stoop, and reach overhead without explaining why he rejected Dr. Osborn's other limitations. Likewise, the ALJ appeared to adopt Dr. Buffington's findings as to the claimant's hands and wrists, but did not discuss or analyze *any* of his other findings. This analysis was particularly important because the ALJ discredited Dr.

Osborn's opinions largely due to inconsistencies with the evidence of record, and Dr. Buffington's findings regarding the claimant's back appear to provide some support for Dr. Osborn's opinions. It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e.g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.") In addition to evaluating Dr. Buffington's findings according to the appropriate standards and indicating what weight he was assigning to them, the ALJ should have explained why he found certain aspects of Dr. Osborn's opinion and Dr. Buffington's opinion persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Because the ALJ failed to properly evaluate the opinions of Dr. Osborn and Dr. Buffington, the decision of the Commissioner should be reversed and the case remanded for further analysis by the ALJ. If such analysis results in an adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 22nd day of September, 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**